IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

| | |
|---|---|
| HOWARD P. FISHER, | ) |
| | ) |
| Petitioner, | ) |
| | ) |
| v. | ) Case No. 3:19-cv-00066 |
| | ) Judge Trauger |
| KEVIN GENOVESE, Warden, | ) |
| | ) |
| Respondent. | ) |

## MEMORANDUM

Howard P. Fisher, proceeding pro se, filed a petition for the writ of habeas corpus under 28 U.S.C. § 2254 (Doc. No. 1), seeking relief from his August 2016 conviction in Davidson County Criminal Court of aggravated assault, for which he was sentenced to 10 years in prison. (*Id.* at 1.) The respondent filed an answer to the petition (Doc. No. 13) and the state court record (Doc. No. 12), and the petitioner filed a reply to the respondent's answer, limited to his assertion of the need for an evidentiary hearing (Doc. No. 14).

This matter is ripe for the court's review, and the court has jurisdiction. The respondent does not dispute that the petition is timely, that this is the petitioner's first Section 2254 petition related to this conviction, and that the claims of the petition have been exhausted. (Doc. No. 13 at 1–2.) Having reviewed the petitioner's arguments and the underlying record, the court finds that an evidentiary hearing is not required. As explained below, the petitioner is not entitled to relief under Section 2254, and his petition will therefore be denied.

### I. PROCEDURAL HISTORY

The petitioner was indicted on March 20, 2015, for aggravated assault and criminal trespass that occurred on January 19, 2015. (Doc. No. 12-1 at 4–5.) The aggravated assault count of the

indictment charged that the petitioner "intentionally or knowingly did cause William Derrick to reasonably fear imminent bodily injury," and that he "did use or display a deadly weapon, to wit: a baseball bat, in violation of Tennessee Code Annotated § 39-13-102[.]" (*Id.* at 4.) After executing written waivers of the right to a jury trial and the right to testify (*id.* at 12–13), the petitioner proceeded to a bench trial on August 2, 2016, where he was convicted on both counts of the indictment. (*Id.* at 14.) The petitioner was sentenced on November 3, 2016, to ten years' incarceration with release eligibility after service of 45% for felony aggravated assault (*id.* at 15), and a $50.00 fine for misdemeanor criminal trespass (*id.* at 16). The petitioner's prison sentence was ordered to run consecutively to the life sentence he was serving on parole at the time of the assault. (*Id.* at 15; Doc. No. 12-7 at 5.)

New counsel was appointed to represent the petitioner in seeking a new trial and on appeal. (Doc. No. 12-1 at 19.) After a hearing at which the petitioner and trial counsel testified, the trial court denied the petitioner's motion for a new trial on May 25, 2017, finding that the evidence was sufficient to support the petitioner's conviction and that trial counsel provided effective assistance in defending him. (Doc. No. 12-3 at 6; Doc. No. 12-9.) The petitioner then appealed to the Tennessee Court of Criminal Appeals (TCCA), which affirmed his convictions in an opinion filed June 20, 2018, but declined to review the claim of ineffective assistance of counsel because it had been stated in general terms without delineation into particular issues with supporting facts. (Doc. Nos. 12-12, 12-13); *State v. Fisher ("Fisher I")*, No. M2017-00975-CCA-R3-CD, 2018 WL 3060369 (Tenn. Crim. App. June 20, 2018).

On September 13, 2018, the Tennessee Supreme Court remanded the case to the TCCA for consideration of the ineffective assistance claim. (Doc. No. 12-16.) The TCCA issued a decision affirming the trial court's disposition of this claim on January 4, 2019. (Doc. No. 12-17*); State v.*

2

*Fisher ("Fisher II")*, No. M2017-00975-CCA-R3-CD, 2019 WL 103885 (Tenn. Crim. App. Jan. 4, 2019). The Tennessee Supreme Court denied the petitioner's application for permission to appeal on March 28, 2019. (Doc. No. 12-21.) On January 10, 2019, while his application was pending before the Tennessee Supreme Court, the petitioner filed the instant pro se habeas petition in this court. (Doc. No. 1.)

## II. STATEMENT OF FACTS

The TCCA provided the following summary of the facts based on the evidence at trial:

> On the night of January 19, 2015, Ismail Salman and William Derrick, the victim, were working at the Discount Mart in Nashville, Tennessee. Earlier that day, Salman had asked the Defendant to leave the store because he was in an altercation with another customer. The Defendant left, but told Derrick, "I will get you after you guys are closed." As Salman and Derrick were closing the store that night, they noticed the Defendant across the street. The Defendant began walking toward Salman and Derrick with a raised baseball bat in hand. Although Salman could not recall exactly what the Defendant was saying as he approached, his words were threatening. Salman warned Derrick that the Defendant was coming, but before the Defendant could reach them, police officers intervened and arrested the Defendant. The Defendant was later charged with and convicted of the instant offenses.
>
> At the August 2, 2016 bench trial, Salman and Derrick testified consistently with the above facts. In addition, Salman noted that he was in fear as the Defendant approached him, holding a raised baseball bat. A video recording from the store's surveillance camera was played for the court, which Salman narrated. The video showed Salman and the Defendant, while the Defendant was approaching with the baseball bat. However, the video also showed, at one point, the Defendant had lowered the bat. Derrick additionally testified that he was "nervous" and thought the Defendant was going to hit him with the bat. The Defendant was about twenty feet from Derrick, and Derrick jumped into a friend's car to get out of the way. Derrick confirmed that he had seen the Defendant with a baseball bat and a protest sign prior to the instant offense and that the Defendant was known for engaging in protests by himself.
>
> Officer Cameron Brown testified that on the night of the offense, he was patrolling the area and saw the Defendant in the parking lot, aggressively approaching the store with a baseball bat in his hand. The Defendant was ordered to put the bat down, and he complied. The Defendant declined to testify and did not present any proof…

*Fisher I*, 2018 WL 3060369, at *1.

As pertinent to the issues raised in the petition, the following summary of the testimony during the petitioner's hearing on his motion for new trial is contained in the TCCA's decision on remand from the Tennessee Supreme Court:

> The Defendant said trial counsel "did not plan a defense, period." The Defendant then apparently offered other defenses including "sid[ing] with the arrest warrant" because it was "void" and "invalid." He said, if that failed, he would have "testified exactly how everything happened;" that he did not "assault[ ] anybody, period;" and that he was only "protesting." Asked if there was anything else that he would like to tell the judge regarding trial counsel's representation, the Defendant said trial counsel "failed to call my defense witnesses that I had requested." The Defendant explained that he had three witnesses, police officers Morton, Lee, and Baker, that could have verified that the Defendant had been protesting while carrying a baseball bat, but he admitted that the officers would not have been able to testify as to the events on the day of his arrest. He agreed, however, that the victim had already testified that the Defendant had been known to frequently carry a bat, so that fact was already in evidence. The Defendant also admitted that trial counsel had subpoenaed Officer Lee, but he was dismissed without consulting the Defendant. The Defendant said another witness, Ms. Greenlee, could have verified his typical behavior with the bat. Again, the Defendant said trial counsel should have argued that the arrest warrant was "bogus" because it was unsigned and not properly stamped. The Defendant suggested that the arrest warrant would have "barred [him] from being tried . . . they would have . . . had to rearrest me." Nevertheless, the Defendant agreed that he could have been indicted regardless of whether he was arrested… .
>
> Trial counsel further reviewed the video recording of the incident "multiple times" with the Defendant, and he hired an Arabic translator to interpret dialog in the video. Trial counsel discussed the case with the Defendant during a video conference and every time they went to court, about half an hour each time. Trial counsel was aware of the Defendant's parole status at the time of representation. Asked how the Defendant's parole status affected his representation, trial counsel said, "Well. With the life sentence, he was offered three [at] thirty, which is a Range 1, the lowest you can get for the charge. He said he definitely didn't want to take that, he didn't want to take anything . . . because it would be an automatic violation of the parole for life[.]" Trial counsel's defense strategy was that a baseball bat was not a deadly weapon per se, and if it was not deadly per se, it had to be deadly in its use or intended use. Trial counsel believed the video did not show the Defendant ever using or attempting to use the baseball bat… .
>
> Trial counsel said he discussed presenting evidence with the Defendant but said the Defendant did not have any evidence other than testifying on his own behalf. Trial counsel and the Defendant discussed several witnesses including Officers Baker and Liu, whom the Defendant confused with Lee. Trial counsel subpoenaed both

4

officers, questioned them before trial, and ultimately dismissed them. Officer Baker "didn't really remember anything about it" and Officer Liu's testimony would have been "detrimental to the case" because he said the Defendant carried the bat "sometimes." Trial counsel explained all of this to the Defendant.

*Fisher II*, 2019 WL 103885, at *3.

### III. CLAIMS PRESENTED FOR REVIEW

The court construes the petitioner's pro se petition to assert the following claims:

(1) that the evidence is insufficient to support his conviction, as it fails to demonstrate "'consummation of [the] alleged crimes' . . . indicat[ing] that [he] intended to 'assault' the victim . . . as defined by statute"; and

(2) that trial counsel was constitutionally ineffective in failing to introduce evidence the petitioner wanted him to introduce.

(Doc. No. 1 at 5–6.)

### IV. LEGAL STANDARD

The statutory authority of federal courts to issue habeas corpus relief for persons in state custody is provided by 28 U.S.C. § 2254, as amended by the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA). A federal court may grant habeas relief to a state prisoner "only on the ground that he is in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Upon finding a constitutional error on habeas corpus review, a federal court may only grant relief if it finds that the error "had substantial and injurious effect or influence in determining the [court]'s verdict." *Brecht v. Abrahamson*, 507 U.S. 619, 637 (1993); *Peterson v. Warren*, 311 F. App'x 798, 803–04 (6th Cir. 2009).

AEDPA was enacted "to reduce delays in the execution of state and federal criminal sentences, particularly in capital cases . . . and 'to further the principles of comity, finality, and federalism.'" *Woodford v. Garceau*, 538 U.S. 202, 206 (2003) (quoting *Williams v. Taylor*, 529 U.S. 362, 436 (2000)). AEDPA's requirements "create an independent, high standard to be met

5

before a federal court may issue a writ of habeas corpus to set aside state-court rulings." *Uttecht v. Brown*, 551 U.S. 1, 10 (2007) (citations omitted). As the Supreme Court has explained, AEDPA's requirements reflect "the view that habeas corpus is a 'guard against extreme malfunctions in the state criminal justice systems,' not a substitute for ordinary error correction through appeal." *Harrington v. Richter*, 562 U.S. 86, 102–03 (2011) (quoting *Jackson v. Virginia*, 443 U.S. 307, 332 n.5 (1979)). Where state courts have ruled on a claim, AEDPA imposes "a substantially higher threshold" for obtaining relief than a de novo review of whether the state court's determination was incorrect. *Schriro v. Landrigan*, 550 U.S. 465, 473 (2007) (citing *Williams v. Taylor*, 529 U.S. 362, 410 (2000)).

Specifically, a federal court may not grant habeas relief on a claim rejected on the merits in state court unless the state decision was "contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," or "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(1), (d)(2). A state court's legal decision is "contrary to" clearly established federal law under Section 2254(d)(1) "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. at 412–13. An "unreasonable application" occurs when "the state court identifies the correct legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. A state court decision is not unreasonable under this standard simply because the federal court finds it erroneous or incorrect. *Id.* at 411. Rather, the federal court must determine that the state court's decision applies federal law in an objectively unreasonable manner. *Id.* at 410–12.

6

Case 3:19-cv-00066   Document 15   Filed 05/06/20   Page 6 of 17 PageID #: 503

Similarly, a district court on habeas review may not find a state court factual determination to be unreasonable under Section 2254(d)(2) simply because it disagrees with the determination; rather, the determination must be "'objectively unreasonable' in light of the evidence presented in the state court proceedings." *Young v. Hofbauer*, 52 F. App'x 234, 236 (6th Cir. 2002). "A state court decision involves 'an unreasonable determination of the facts in light of the evidence presented in the State court proceeding' only if it is shown that the state court's presumptively correct factual findings are rebutted by 'clear and convincing evidence' and do not have support in the record." *Matthews v. Ishee*, 486 F.3d 883, 889 (6th Cir. 2007) (quoting Section 2254(d)(2) and (e)(1)); *but see McMullan v. Booker*, 761 F.3d 662, 670 & n.3 (6th Cir. 2014) (observing that the Supreme Court has not clarified the relationship between (d)(2) and (e)(1) and the panel did not read *Matthews* to take a clear position on a circuit split about whether clear and convincing rebutting evidence is required for a petitioner to survive (d)(2)). Moreover, under Section 2254(d)(2), "it is not enough for the petitioner to show some unreasonable determination of fact; rather, the petitioner must show that the resulting state court decision was 'based on' that unreasonable determination." *Rice v. White*, 660 F.3d 242, 250 (6th Cir. 2011).

The standard set forth in 28 U.S.C. § 2254(d) for granting relief on a claim rejected on the merits by a state court "is a 'difficult to meet' and 'highly deferential standard for evaluating state-court rulings, which demands that state-court decisions be given the benefit of the doubt.'" *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011) (quoting *Richter*, 562 U.S. at 102, and *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002) (per curiam)). The petitioner bears the burden of proof. *Pinholster*, 563 U.S. at 181.

Even that demanding review, however, is ordinarily only available to state inmates who have fully exhausted their remedies in the state court system. 28 U.S.C. §§ 2254(b) and (c) provide

7

that a federal court may not grant a writ of habeas corpus on behalf of a state prisoner unless, with certain exceptions, the prisoner has presented the same claim sought to be redressed in a federal habeas court to the state courts. *Pinholster*, 563 U.S. at 182; *Kelly v. Lazaroff*, 846 F.3d 819, 828 (6th Cir. 2017) (quoting *Wagner v. Smith*, 581 F.3d 410, 417 (6th Cir. 2009)) (petitioner must present the "same claim under the same theory" to the state court). This rule has been interpreted by the Supreme Court as one of total exhaustion, *Rose v. Lundy*, 455 U.S. 509 (1982), meaning that each and every claim set forth in the federal habeas corpus petition must have been presented to the state appellate court. *Picard v. Connor*, 404 U.S. 270 (1971); *see also Pillette v. Foltz*, 824 F.2d 494, 496 (6th Cir. 1987) (exhaustion "generally entails fairly presenting the legal and factual substance of every claim to all levels of state court review"). Moreover, the substance of the claim must have been presented as a federal constitutional claim. *Gray v. Netherland*, 518 U.S. 152, 162–63 (1996).

The procedural default doctrine is ancillary to the exhaustion requirement. *See Edwards v. Carpenter*, 529 U.S. 446 (2000) (noting the interplay between the exhaustion rule and the procedural default doctrine). If the state court decides a claim on an independent and adequate state ground, such as a procedural rule prohibiting the state court from reaching the merits of the constitutional claim, a petitioner ordinarily is barred from seeking federal habeas review. *Wainwright v. Sykes*, 433 U.S. 72, 81–82 (1977*); see also Walker v. Martin*, 562 U.S. 307, 315 (2011) ("A federal habeas court will not review a claim rejected by a state court if the decision of the state court rests on a state law ground that is independent of the federal question and adequate to support the judgment"); *Coleman v. Thompson*, 501 U.S. 722 (1991) (same). If a claim has never been presented to the state courts, but a state court remedy is no longer available (e.g., when an applicable statute of limitations bars a claim), then the claim is technically exhausted, but

8

procedurally barred. *Coleman*, 501 U.S. at 731–32. If a claim is procedurally defaulted, "federal habeas review of the claim is barred unless the prisoner can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750.

## V. ANALYSIS

### A. Sufficiency of the Evidence

The petitioner's primary challenge is to the sufficiency of the evidence to support his aggravated assault conviction. (Doc. No. 1 at 5–6.) The TCCA properly stated the standard for appellate review of such a claim as "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Fisher I*, 2018 WL 3060369, at *2 (quoting, *e.g.*, *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)). In accord with this standard, "a reviewing court 'faced with a record of historical facts that supports conflicting inferences must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution.'" *Cavazos v. Smith*, 565 U.S. 1, 6 (2011) (quoting *Jackson*, 443 U.S. at 326)). Thus, a federal habeas court must resist substituting its own opinion for that of the factfinder. *York v. Tate*, 858 F.2d 322, 329 (6th Cir. 1988).

In addition to this requirement of deference to the factfinder's verdict concerning the substantive elements of the crime under state law, this court must defer to the TCCA's consideration of that verdict under AEDPA. *See Tucker v. Palmer*, 541 F.3d 652, 656 (6th Cir. 2008) (stating that "the law commands deference at two levels" when adjudicating sufficiency-of-the-evidence claim). The TCCA's consideration of the petitioner's sufficiency-of-the-evidence claim is set out below:

The indictment in this case charged that the Defendant "intentionally or knowingly did cause William Derrick to reasonably fear imminent bodily injury, and [the Defendant] did use or display a deadly weapon, to wit: a baseball bat[.]" Accordingly, to sustain a conviction of assault, the State was required to prove that the Defendant "intentionally or knowingly cause[d] another to reasonably fear imminent bodily injury." T.C.A. § 39-13-101(a)(2). A person acts intentionally when his conscious objective or desire is to engage in the conduct or cause the result. *Id.* § 39-11-106(a)(18). A person acts knowingly when he is aware of the nature of his conduct or that the circumstances exist or that he is aware that his conduct is reasonably certain to cause the result. *Id.* § 39-13-101(a)(20). "Imminent danger is an immediate, real threat to one's safety." *State v. Bobby Joe Young, Jr.*, No. M2010-01531-CCA-R3-CD, 2011 WL 6291813, at *7 (Tenn. Crim. App. Dec. 14, 2011), *perm. app. denied* (Tenn. Apr. 20, 2012) (citing Black's Law Dictionary (8th ed. 2004)) (affirming aggravated assault conviction by display of deadly weapon and rejecting zone of danger theory). Proof of a victim's fear may be inferred from circumstantial evidence. *See State v. James Paris Johnson*, No. E2008-02555-CCA-R3-CD, 2010 WL 3565761, at *5 (Tenn. Crim. App. Sept. 15, 2010) (internal citations omitted) (same). To elevate this offense to aggravated assault, as indicted here, the State was required to additionally prove that the Defendant "use[d] or display[ed] a deadly weapon." T.C.A. § 39-13-102(a)(1)(A)(iii). A deadly weapon is defined as either "(A) a firearm or anything manifestly designed, made or adapted for the purpose of inflicting death or serious bodily injury; or (B) anything that in its manner of use or intended use is capable of causing death or serious bodily injury." *Id.* § 39-11-106(a)(5). An object that is not necessarily deadly per se, may nonetheless be deadly "if the defendant in a particular case actually used or intended to use the item to cause death or serious bodily injury." *State v. McGouey*, 229 S.W.3d 668, 673 (Tenn. 2007).

Citing *Morgan v. State* and its progeny, the Defendant argues that the baseball bat was neither a deadly weapon per se nor used in a deadly manner. 220 Tenn. 247, 252, 415 S.W.2d 879, 881-82 (1967) (concluding that instrument inside of sock used to pry open door and bludgeon victim qualified as deadly weapon by reason of the manner in which it was used). To establish a deadly weapon under subsection (a)(5)(B), the Defendant insists that the State was required to show that the use of the baseball bat was "likely to produce death or cause great bodily injury," and cannot be based on the possible use of the baseball bat. Because the Defendant put the bat down when ordered to do so, he claims his intended use had not yet "manifested itself to a sufficient degree to permit the interpretation that the bat had become a deadly weapon by its intended use." In other words, the Defendant maintains that holding a baseball bat and aiming it at the victim from twenty feet away is insufficient as a matter of law to establish the bat as [a] deadly weapon. We disagree.

We begin by recognizing that a baseball bat is not a deadly weapon per se because it is neither "a firearm or a weapon designed, made or adapted to expel a projectile by the action of an explosive or any device readily convertible to that use." *See*

10

T.C.A. § 39-11-106(a)(11). Accordingly, we must now consider whether the baseball bat became a deadly weapon by the manner in which the Defendant used it, as contemplated by subsection (a)(5)(B). In reviewing this issue, we recognize the dictates of *McGouey*, which requires us to analyze subsection (a)(5)(B)'s "use or intended use" clause with a focus upon "how the object was used in the particular case." *Id.* at 673. We further recognize that the evidence in the record must show that the Defendant "used or intended to use" the baseball bat in a manner capable of causing serious bodily injury or death. *Id.* at 674.

Here, the proof showed that the Defendant was asked to leave the store earlier in the day following an altercation with another customer. In response, the Defendant told the victim, "[W]hen I come back, I'm gonna get you." The Defendant returned that night carrying a baseball bat. The victim and his co-worker were closing the store and locking the doors. The Defendant started to approach them with the bat, which he had raised at one point while yelling. Although neither witness could hear what the Defendant was saying, he seemed "angry." The victim felt "nervous" as the Defendant approached, thought he was going to be struck, and jumped into a friend's nearby car to avoid the Defendant. We acknowledge that the Defendant was nearly twenty feet from the victim when he brandished the bat. However, by emphasizing the distance from the victim coupled with the absence of imminent fear, the Defendant essentially argues a "zone of danger" theory, which this court has repeatedly rejected in the context of aggravated assault. *See James Paris Johnson*, 2010 WL 3565761, at *6 (Tenn. Crim. App. Sept. 15, 2010); *Bobby Joe Young, Jr.*, 2011 WL 6291813, at *7. In *James Paris Johnson*, this court reasoned that the zone of danger doctrine applied to the offense of reckless endangerment and did not apply to aggravated assault because with aggravated assault "[t]he point at issue is not whether the victim was within a certain physical area within which he might be harmed even if he was unaware of the danger, but whether his fear of imminent bodily injury was reasonable." *James Paris Johnson*, 2010 WL 3565761, at *6; *see also State v. Thomas*, No. E2013-02196-CCA-R3CD, 2014 WL 2021952, at *4 (Tenn. Crim. App. May 15, 2014).

The record clearly shows that the Defendant was approaching the victim in an aggressive manner with a baseball bat in his hand. As the Defendant did so, the victim feared that he would be struck by the Defendant and jumped into a nearby car to avoid harm. Based on the Defendant's threats to "get" the victim from earlier in the day, it was reasonable for the victim to believe that the Defendant presented a real, immediate threat to his safety. While this proof is far from overwhelming, viewing it in the light most favorable to the State as we must, we conclude that any rational juror could have found that the Defendant knowingly caused the victim to reasonably fear imminent bodily injury by the manner in which he displayed a deadly weapon, to wit: a baseball bat. He is not entitled to relief on this issue.

*Fisher I*, 2018 WL 3060369, at *2–3.

This court has reviewed the transcript of the petitioner's trial and finds that the TCCA's decision is supported in the record. The petitioner appears to be arguing that, in the absence of evidence of "consummation of alleged crimes," no reasonable juror could find beyond a reasonable doubt that he "intended to 'assault' the victim . . . as defined by statute." (Doc. No. 1 at 5.) However, "[a]ggravated assault is not an inchoate crime" such as the crime of attempt, but "an offense carried to completion" when, under sections 39-13-101(a)(2) and 39-13-102(a)(1)(A)(iii) of the Tennessee Code, one intentionally or knowingly causes another to reasonably fear imminent bodily injury while using or displaying a deadly weapon. *State v. Trusty*, 919 S.W.2d 305, 312 (Tenn. 1996), *overruled on other grounds by State v. Dominy*, 6 S.W.3d 472 (Tenn.1999). Thus, "one can commit the offense of aggravated assault by placing another person in fear of danger even if there is no risk of danger." *State v. Hatfield*, 130 S.W.3d 40, 42 (Tenn. 2004) (quoting *State v. Moore*, 77 S.W.3d 132, 136 (Tenn. 2002)).

Here, a rational factfinder could determine from the evidence at trial that, after previously threatening that he would return to "get" the victim, the petitioner's return to the parking lot of the victim's place of employment with a baseball bat in hand established the petitioner's intent to cause fear of imminent bodily injury. A rational factfinder could further find that the victim's testimony that he was nervous, combined with his action in jumping into a friend's car when the petitioner was about twenty feet away, established that he reasonably feared that bodily injury was imminent. Whether the petitioner would actually have struck the victim with his baseball bat had the police not intervened is immaterial to the validity of his aggravated assault conviction. The evidence was sufficient for a rational juror to find the elements of aggravated assault beyond a reasonable doubt, and the TCCA reasonably so found. The petitioner's claim to the contrary is without merit.

12

B. <u>Ineffective Assistance of Counsel</u>

Although not well articulated in the petition and not appreciated by the respondent in describing the claims presented there, the court liberally construes an ineffective assistance claim from the petition's charge that counsel "deliberately rejected" the petitioner's requests to introduce certain "evidence presented in [his] Supplemental Arguments," despite counsel's obligation "to honor the canons of professional conduct in allowing his client to be as much a part of his defense as he is." (Doc. No. 1 at 6.) Among the documents attached to and incorporated by the petition is a pro se "Motion to Amend Petitioner's Writ of Error Coram Nobis and Motion for New Trial" which the petitioner apparently attempted to file in the trial court. (Doc. No. 1 at 27–30.) In addition to multiple claims of trial court error, this document asserts trial counsel's ineffectiveness in failing to call three police officers and other witnesses "as instructed" by the petitioner, and in failing to "plan a defense for petitioner." (*Id.* at 29.) This ineffective-assistance claim was exhausted before the TCCA, which ruled on its merits following the Tennessee Supreme Court's remand for that purpose. *Fisher II*, 2019 WL 103885, at \*6 ("As his last ground for relief, the Defendant argues that trial counsel was ineffective in failing to plan a defense and failing to call various witnesses on his behalf.").

All federal claims of ineffective assistance of counsel are subject to the highly deferential two-prong standard of *Strickland v. Washington*, 466 U.S. 668 (1984), which asks: (1) whether counsel was deficient in representing the defendant; and (2) whether counsel's alleged deficiency prejudiced the defense so as to deprive the defendant of a fair trial. *Id.* at 687. To meet the first prong, a petitioner must establish that his attorney's representation "fell below an objective standard of reasonableness," and must overcome the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that . . . the challenged action 'might be considered sound trial

13

strategy.'" *Id.* at 688–89. The "prejudice" component of the claim "focuses on the question of whether counsel's deficient performance renders the result of the trial unreliable or the proceeding fundamentally unfair." *Lockhart v. Fretwell*, 506 U.S. 364, 372 (1993). Prejudice under *Strickland* requires showing that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

As discussed above, however, a federal court may not grant habeas relief on a claim that has been rejected on the merits by a state court, unless the petitioner shows that the state court's decision "was contrary to" law clearly established by the United States Supreme Court, or that it "involved an unreasonable application of" such law, or that it "was based on an unreasonable determination of the facts" in light of the record before the state court. 28 U.S.C. §§ 2254(d)(1) and (2); *Williams v. Taylor*, 529 U.S. 362, 412 (2000). Thus, when an exhausted claim of ineffective assistance of counsel is raised in a federal habeas petition, the question to be resolved is not whether the petitioner's counsel was ineffective. Rather, "[t]he pivotal question is whether the state court's application of the *Strickland* standard was unreasonable." *Harrington v. Richter*, 562 U.S. at 101. As the Supreme Court clarified in *Harrington*,

> This is different from asking whether defense counsel's performance fell below *Strickland*'s standard. Were that the inquiry, the analysis would be no different than if, for example, this Court were adjudicating a *Strickland* claim on direct review of a criminal conviction in a United States district court. Under AEDPA, though, it is a necessary premise that the two questions are different. For purposes of § 2254(d)(1), an unreasonable application of federal law is different from an incorrect application of federal law. A state court must be granted a deference and latitude that are not in operation when the case involves review under the *Strickland* standard itself.

*Id.* (internal quotation marks and citation omitted).

14

The TCCA correctly identified and summarized the *Strickland* standard applicable to this claim. *Fisher II*, 2019 WL 103885, at *5. Accordingly, the critical question is whether the state court applied *Strickland* reasonably in reaching the following conclusions:

> Upon our review, the record does not preponderate against the determination of the trial court [that counsel provided effective assistance]. As an initial matter, the trial court accredited the testimony of trial counsel over the testimony of the Defendant as to each ground for relief. . . . Although the Defendant testified that trial counsel failed to provide a defense "period" and failed to call witnesses, trial counsel testified that he conducted "exhaustive case law research" on the Defendant's case. Trial counsel mounted a legal defense which centered upon whether a baseball bat, as used in this case, was a deadly weapon as required by law, and argued that the Defendant never raised the bat at the victim. Trial counsel further explained that he did not call any defense witnesses because, after discussing the case with two of the officers, their testimony would not have been beneficial. In any event, the Defendant did not present any of the purported witnesses during the hearing [on the motion for new trial], *see Black v. State*, 749 S.W.2d 752, 757 (Tenn. Crim. App. 1990), and had he done so, their testimony would have been cumulative to the testimony of the victim, who conceded that the Defendant was often seen carrying a baseball bat. Because the trial court found the Defendant's testimony as to all issues presented to be incredible, the Defendant has failed to establish by clear and convincing evidence that trial counsel was ineffective.

*Id.* at *6.

The TCCA reasonably analyzed this issue and determined that counsel was not ineffective under *Strickland*. Counsel has a duty "to consult with the defendant on important decisions and to keep the defendant informed of important developments in the course of the prosecution," but is entitled to "wide latitude . . . in making tactical decisions" such as whether to call witnesses or which witnesses to call. *Strickland*, 466 U.S. at 688–89. On the record before it—where counsel decided, based on all the circumstances, to limit his defense to an attack on the legal sufficiency of the State's proof to establish the elements of aggravated assault—the TCCA, in affirming the trial court, reasonably determined that the petitioner had not overcome the strong presumption that counsel's decisions were sound trial strategy. *Id.* at 689–90. The TCCA appropriately deferred to the trial court's credibility findings in considering counsel's rationale for presenting no witnesses

15

to oppose the State's case, and reasonably found that counsel's performance was not deficient. The petitioner's ineffective-assistance claim is thus without merit.

Finally, it is possible to construe the petition as claiming that the sufficiency of the evidence is undermined by a "question of authenticity" in the petitioner's arrest warrant; that counsel was ineffective in failing to challenge the authenticity of the warrant; and that any such defect otherwise jeopardized the petitioner's right to a fair trial. (*See* Doc. No. 1 at 5.) However, in addition to being barred from review by procedural default, any such claims based on the State's failure to properly authenticate an arrest warrant under state procedural rules are not cognizable on federal habeas review—particularly where, as here, the petitioner was ultimately tried upon the indictment of the grand jury. *Turner v. Sheldon*, No. 3:12 CV 863, 2014 WL 2002833, at *14 (N.D. Ohio May 13, 2014). *See also*, *e.g.*, *Mattox v. Davis*, 549 F. Supp. 2d 877, 931 & n.22 (W.D. Mich. 2008) ("[T]he power of a court to try a person is not impaired by any defect in the arrest warrant or the method of bringing the person before the court.") (citing, *e.g.*, *United States v. Crews*, 445 U.S. 463 (1980) ("An illegal arrest, without more, has never been viewed as a bar to subsequent prosecution, nor as a defense to a valid conviction.")).

In sum, the court finds that the petitioner is not entitled to habeas relief on any ground raised in the petition.

## VI. CONCLUSION

For the foregoing reasons, the habeas corpus petition will be denied and this matter will be dismissed with prejudice.

When the district court denies a ground for relief on the merits in a habeas corpus action, a certificate of appealability (COA) "may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right," 28 U.S.C. § 2253(c)(2), the standard being whether

16

"reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Because the petitioner has not made a substantial showing of the denial of a constitutional right with respect to any ground for relief asserted in the petition, a COA will not issue.

An appropriate order will enter.

_____
Aleta A. Trauger
United States District Judge

17